IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

DEANNA JEAN CHEETHAM,

           Plaintiff,

v.                                            CIVIL ACTION NO. 3:12-0388

LOCOMOTIVE ENGINEERS & CONDUCTORS
MUTUAL PROTECTIVE ASSOCIATION
a/k/a LECMPA,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

        Pending before the Court is a Motion to Dismiss by Defendant Locomotive Engineers & Conductors Mutual Protection Association a/k/a LECMPA. [ECF No. 7]. Plaintiff Deanna Jean Cheetham filed a Response opposing the motion. Upon review, the Court agrees with LECMPA and **GRANTS** the Motion to Dismiss.

**I.
FACTUAL BACKGROUND**

        Plaintiff worked for CSX Transportation (CSX) from February 9, 1998, until her termination on April 20, 2005. During her employment, she was insured by LECMPA, which provides replacement income to certain discharged members. According to LECMPA, it is a Non-Profit Cooperative Assessment Association, which was incorporated in 1910 under the laws of the State of Michigan. It maintains its office and principal place of business in Southfield, Michigan, and is governed by the State of Michigan Office of Financial and Insurance Regulation.

On April 28, 2005, Plaintiff gave written notice of her discharge to LECMPA, and she requested replacement income. On May 26, 2005, LECMPA denied her request because CSX stated she was terminated for insubordination, which is an exception to coverage under the policy. The exception specifically provides, in part:

### EXCEPTIONS

> This policy does not cover discharge or suspension resulting directly or indirectly, wholly or partly from any of the following causes: . . . insubordination . . . [or] knowingly disobeying orders, rules or instructions . . . . *The cause assigned by the employer shall conclusively determine the liability of the Association*.

*LECMPA Policy*, at 2 (italics added).

Plaintiff, who was a resident of Florida at the time, filed a wrongful termination action against CSX in the United States District Court for the Middle District of Florida, Jacksonville Division.[1] On February 23, 2011,[2] a jury returned a verdict in her favor, finding CSX violated the Family Medical Leave Act (FMLA). The district court then issued a judgment on March 3, 2011, and later issued an amended judgment on July 6, 2011.

Thereafter, Plaintiff reapplied with LECMPA for income replacement benefits, and provided LECMPA a copy of the jury verdict. On April 12, 2011, LECMPA denied the request. Therefore, Plaintiff filed this diversity action against LECMPA for benefits and bad faith on

---

[1] Case number 3:06-cv-704-TJC-HTS.

[2] The Complaint actually alleges the jury returned its verdict on February 23, 2001. The Court presumes this is a misnomer, and the actual date is 2011.

February 13, 2012.  *See* 28 U.S.C. § 1332.  The only connection West Virginia has to this action is that Plaintiff currently resides here.

LECMPA now moves to dismiss this action for three general reasons.  First, it argues there is no coverage under the policy.  Second, it asserts her claims are time barred.  Third, it argues she cannot state a claim for statutory or common law bad faith under the applicable law.  Upon review, the Court agrees with LECMPA that Plaintiff has failed to state a claim upon which relief can be granted.

## II.
## STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563.  In its place, courts must now look for "plausibility" in the complaint.  This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted).  Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted).  If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.*

### III.
### DISCUSSION

In considering the issues before the Court, the Court first must decide what law applies. As this action is based upon diversity jurisdiction, this Court must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Volvo Const. Equip.. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599–600 (4th Cir. 2004). Thus, in this case, West Virginia's rules apply.

With respect to contract cases, the West Virginia rules provide that "[t]he law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this state." Syl. Pt. 3, *Howe v. Howe*, 625 S.E.2d 716 (W. Va. 2005) (internal citations and quotation marks omitted). However, the parties may defeat

this general rule "by making a choice of law in the contract." *Nadler v. Liberty Mut. Fire Ins. Co.*, 424 S.E.2d 256, 261 n.8 (W. Va. 1992) (citations omitted). When, as here, a contract contains a choice-of-law provision, West Virginia law generally will enforce the provision "unless the chosen state has no substantial relationship to the parties to the transaction or unless the application of the law of the chosen state would be contrary to the fundamental public policy of the state whose law would apply in the absence of a choice of law provision." *Bryan v. Mass. Mut. Life Ins. Co.*, 364 S.E.2d 786, 790 (W. Va.1987); *see also Gen. Elec. Co. v. Keyser*, 275 S.E.2d 289, 293 (W. Va.1981) (same); *cf. Lee v. Saliga*, 373 S.E.2d 345, 351 (W. Va.1988) ("Our traditional contract conflict rule gives substantial deference to the state where the contract is made and where it is to be performed, assuming both incidents occur in the same state. This rule is subject to two qualifications: (1) that the parties have not made a choice of applicable law in the contract itself; and (2) the law of the other state does not offend our public policy.").

The choice-of-law provision in this case states: "The rights of the member and the Association under this policy shall be governed by the laws of the State of Michigan." *LECMPA Policy*, at 1. Upon review, the Court finds no reason why Michigan law should not be enforced. Clearly, Michigan has a substantial relationship to LECMPA as it was incorporated in Michigan over one-hundred years ago and maintains its office and principal place of business in Michigan. In addition, LECMPA is governed by Michigan's Office of Financial and Insurance Regulation, and the Privacy Policy in the parties' contract specifically states that LECMPA will "compl[y] with restrictions and guidelines imposed by" Michigan. *Id*. at 3. Plaintiff makes no argument that Michigan does not have a substantial interest in this case, nor could she under these facts.

Moreover, the Court finds that application of Michigan law in this case is not contrary to a fundamental public policy in West Virginia. In *Howe v. Howe*, 625 S.E.2d 716 (W. Va. 2005), the West Virginia Supreme Court held: "The mere fact that the substantive law of another jurisdiction differs from or is less favorable than the law of the forum state does not, by itself, demonstrate that application of the foreign law under recognized conflict of laws principles is contrary to the public policy of the forum state." Syl Pt. 7, 625 S.E.2d 716 (quoting Syl. Pt. 3, *Nadler v. Liberty Mut. Fire Ins. Co.*, 424 S.E.2d 256 (W. Va. 1992)). Invoking West Virginia public policy to prevent enforcement of another state's valid law should not be taken lightly. *Id.* at 724. Instead, courts should "adhere to the general principle that a court should not refuse to apply foreign law, in otherwise proper circumstances, on public policy grounds unless the foreign law is contrary to pure morals or abstract justice, or unless enforcement would be of evil example and harmful to its own people." *Id.* at 724-25 (quoting *Nadler*, 424 S.E.2d at 265 (internal citations and quotations omitted)).

Plaintiff asserts that the exclusion should not be enforced because the policy allows the employer's stated cause for termination to control whether benefits are awarded even when that stated reason is proven wrong. Plaintiff argues West Virginia law strictly construes such exclusionary provisions against an insurer so that indemnity is not defeated. *See Riffe v. Home Finders Assoc., Inc.*, 517 S.E.2d 313, 319 (W. Va. 1999) (stating "[w]here the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated" (internal quotation marks and citations omitted)). However, here the policy clearly and unambiguously provides "[t]he cause assigned by the employer shall

-6-

conclusively determine the liability of the Association." *LECMPA Policy*, at 2. Thus, the Court must apply rather than construe the language. *See* Syl. Pt. 2, *Russell v. State Auto. Mut. Ins. Co.*, 422 S.E.2d 803 (W. Va. 1992) (stating the "[l]anguage in an insurance policy should be given its plain, ordinary meaning" (internal quotation marks and citation omitted)); Syl. Pt. 3, *American States Ins. Co. v. Tanner*, 563 S.E.2d 825 (W. Va. 2002) (holding "[w]here the provisions in an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended" (internal quotation marks and citations omitted)). However, even if the Court would strictly construe the language against the insurer, the exception still applies. The Court finds Plaintiff has failed to cite any reason that is sufficient to defeat the operation of Michigan law.

Like in West Virginia, under Michigan law, clear and unambiguous terms of an insurance contract are to be given full effect. *See Rory v. Continental Ins. Co.,* 703 N.W.2d 23, 30 (Mich. 2005) ( "A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written*." (Italics original; footnote with citations omitted)). LECMPA's decision to deny benefits based upon the reason proffered by CSX was plainly in accordance with the policy language. Although Plaintiff believes the result is unjust, the Court cannot ignore the clear contractual language. In fact, in *Rory*, the Supreme Court of Michigan held that the legislature "assigned the responsibility of evaluating the 'reasonableness' of an insurance contract . . . the Commissioner of Insurance. The statute permits, but does not require, the Commissioner to disapprove or withdraw an insurance contract if the Commissioner determines that a condition or exception is unreasonable or deceptive." 703 N.W.2d at 34 (footnote omitted);

*see* MCL 500.2236.[3] Accordingly, the court found "the explicit 'public policy' of Michigan is that the reasonableness of insurance contracts is a matter for the executive, not judicial, branch of government." *Id*. at 35.

In this case, Plaintiff makes no argument that Michigan's Insurance Commissioner ever found the language at issue unreasonable or disapproved of the policy. In addition, as indicated by LECMPA, the Supreme Court of Michigan enforced the application of similar policy language as far back as 1915, in the case of *Palmer v. Locomotive Engineers' & Conductors' Mut. Protective Ass'n*, 155 N.W. 357 (Mich. 1915).[4] In *Palmer*, the plaintiff attempted to show that the cause given by his employer for his discharge was inaccurate. *Id*. However, such evidence was not permitted into evidence, and the defendant was awarded a directed verdict. *Id*.[5]

---

[3]MCL 500.2236(5) provides, in part:

> Upon written notice to the insurer, the commissioner may disapprove, withdraw approval or prohibit the issuance, advertising, or delivery of any form to any person in this state if it violates any provisions of this act, or contains inconsistent, ambiguous, or misleading clauses, *or contains exceptions and conditions that unreasonably or deceptively affect the risk purported to be assumed in the general coverage of the policy*.

MCL 500.2236(5), in part (italics added).

[4]The policy language in *Palmer* provided: "That the cause assigned by my employer for suspension or discharge shall be the sole basis of determining the liability of the association." *Id*.

[5]The Court finds the fact Plaintiff has a jury verdict disavowing the reason proffered by CSX for her termination makes no difference with regard to enforcing the contract language as written.

Accordingly, given that Plaintiff has not set forth any valid reason the provision should not be enforced under Michigan law, the Court finds she is not entitled to coverage under the clear terms of the policy. Therefore, the Court **GRANTS** Defendant's Motion to Dismiss her claim for benefits. In addition, for the reasons stated above, the Court further finds Plaintiff cannot pursue a claim for statutory or common law bad faith under West Virginia law, and Michigan does not recognize a private right of action for bad faith. *Travier v. Auto Club Group Ins. Co.*, 2012 WL 593580, Docket No. 301122 (Mich. App. Feb. 23, 2012) (stating "Michigan does not recognize an independent tort for bad faith in the handling of an insurance claim" (citing *Roberts v. Auto–Owners Ins Co.*, 374 N.W.2d 905 (Mich. 1985)); *see also Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir.2003) ("An implied covenant of good faith and fair dealing in the performance of contracts is recognized by Michigan law only where one party to the contract makes its performance a matter of its own discretion." (Citations omitted)). Thus, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's claim for statutory bad faith under West Virginia law and her claim for common law bad faith.[6] As Plaintiff has no remaining claims, the Court **DISMISSES** this case from the docket of the Court.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: June 27, 2012

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[6]Having dismissed all of Plaintiff's claims, the Court finds it unnecessary to analyze whether or not Plaintiff's claims also are barred by the statute of limitations.